UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELECTRONIC PUBLICATION ONLY

ALAN M. BERKUN,

                              Petitioner,

- versus -

DUKE TERRELL, Warden,

                              Respondent.

MEMORANDUM AND ORDER

12-CV-706 (JG)

A P P E A R A N C E S :

    ALAN M. BERKUN
        #58618-053
        FCI Miami
        Federal Correctional Institution
        P.O. Box 779800
        Miami, Florida 33177

        Petitioner, *Pro Se*

    LORETTA E. LYNCH
        United States Attorney
        271 Cadman Plaza East
        7th Floor
        Brooklyn, New York 11201
    By:    Ameet B. Kabrawala

        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Petitioner Alan M. Berkun, who is currently incarcerated at the Federal Correctional Institution in Miami, Florida ("FCI Miami"), files this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Berkun claims that his First Amendment rights were violated when prison authorities denied his request to receive a jigsaw puzzle by mail from

an online retailer.  He also claims the regulations governing federal prisoners' possession of property are arbitrary and capricious.  For the reasons set forth below, the petition is denied.

BACKGROUND

Berkun's petition relates to events that occurred while he was incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  Pet. 1, ECF No. 1.  Berkun requested permission to receive a jigsaw puzzle, which his family intended to purchase and send to him by mail from an online retailer.  The request was denied.  Respondent Duke Terrell, then the MDC warden, explained in a letter to Berkun dated June 28, 2011, as follows:

> [I]n accordance with institutional rules and regulations jigsaw puzzles are not approved as inmate personal property at MDC Brooklyn.  However, jigsaw puzzles are hobby craft items that can be provided by the Recreation Department at MDC Brooklyn upon request and approval.
>
> Specifically, Program Statement 5370.11, *Recreation Programs, Inmate*, indicates the art and hobby craft program enables inmates to make constructive use of their leisure hours and use their skills and creative abilities constructively.  Moreover, Program Statement 5370.11 also indicates the use of hobby craft facilities is a privilege that may be granted or denied.  Accordingly, you may submit a Request to Staff to the Recreation Department requesting access to a jigsaw puzzle.

*See* Pet., Ex. 3.

Berkun argues that the rejection of his request to receive a jigsaw puzzle violated his First Amendment rights.  He asks the Court to "rule in favor of Petitioner and order the [Federal Bureau of Prisons] to allow Petitioner's family to order from Amazon.com a jigsaw puzzle for the benefit of petitioner's personal enjoyment and [e]nsure its delivery to him at his place of incarceration."  Pet. 2.

In addition, for the first time at oral argument, Berkun sought to challenge the validity of regulations promulgated by the Federal Bureau of Prisons ("BOP") governing the

2

possession of property by federal inmates.  Berkun appears to argue that these regulations, 28 C.F.R. §§ 553.10 and 553.11, insofar as they resulted in the denial of his request to receive a jigsaw puzzle, are arbitrary and capricious.

## DISCUSSION

A.  *Availability of the Relief Sought*

The government asserts that the type of relief sought here – an order requiring Berkun's custodian to allow him to receive a jigsaw puzzle – is not available in a habeas corpus action.  The government further argues that this relief cannot be obtained in an action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551–59, 701–06, or via a writ of mandamus.

I conclude that this action was properly brought as a habeas action.  A federal prisoner challenging the manner of execution of his sentence may seek habeas relief pursuant to 28 U.S.C. § 2241.  *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008); *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  Challenges to the execution of a sentence typically include matters such as "prison transfers, type of detention and *prison conditions*."  *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (emphasis added); *see also Thompson*, 525 F.3d at 209 ("[T]o the extent Thompson was seeking injunctive relief from federally imposed conditions of confinement in the service of his federal sentence, we understand neither why the district court believed that the claim should have been styled a civil rights complaint rather than a petition under § 2241 for a

writ of habeas corpus, nor what sort of civil rights claim the court envisioned."); *Boudin v. Thomas*, 732 F.2d 1107, 1111–12 (2d Cir. 1984).[1]

Notwithstanding this Second Circuit case law, some lower court decisions hold that challenges to certain actions of prison authorities are not properly brought pursuant to § 2241. For example, "claims based upon the loss of commissary and visitation privileges," *Hernandez v. Lindsay*, No. 08-CV-1495 (SJF), 2011 WL 3163078, at *3 (E.D.N.Y. July 22, 2011), or challenges to the regulations governing what is treated as "legal mail," *Pollard v. Terrell*, No. 10-CV-4811 (ARR), 2011 WL 5117590, at *2–3 (E.D.N.Y. Oct. 24, 2011), have been rejected as unavailable in a habeas action.

But whatever the limits are to the type of challenges that may be brought under § 2241, I conclude this case falls comfortably within them. Prison conditions consist of "*all conditions under which a prisoner is confined for his term of imprisonment*" including "*general conditions affecting a prisoner's quality of life*." *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (emphasis added). A prisoner's right to possess items to which he is entitled under the First Amendment is a general condition affecting the prisoner's quality of life. I conclude that this challenge is therefore properly brought pursuant to § 2241.[2]

---

[1] The fact that a prisoner may bring a habeas action to challenge conditions of confinement does not mean that a prisoner may not elect to bring a civil rights action instead. *See Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999) (state prisoner may bring action pursuant to 42 U.S.C. § 1983 "challenging the validity of a disciplinary or administrative sanction that does not affect the overall length of the prisoner's confinement").

[2] "The proper venue for a Section 2241 habeas petition challenging conditions of confinement is the district where the petitioner is confined." *Dixon v. Terrell*, No. 10-CV-5262 (KAM), 2011 WL 4543712, at *6 (E.D.N.Y. Sept. 29, 2011); *see also Sullivan v. United States*, No. 02-CV-4947 (SJ), 2002 WL 32096584, at *2 (E.D.N.Y. Dec. 6, 2002). "However, if a petitioner brings a habeas petition in a particular district and then is transferred to another jurisdiction while the petition is pending, the court in which the petition originally was filed retains jurisdiction." *Dixon*, 2011 WL 4543712, at *6; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). Although Berkun is currently incarcerated at FCI Miami, he was incarcerated at the MDC within this district when he filed his petition. Accordingly, venue here is proper. *See Dixon*, 2011 WL 4543712, at *6.

In any event, the unavailability of habeas relief would not leave Berkun without a remedy (assuming for the moment that he can establish a violation of a constitutional right). "Suits to enjoin the unlawful actions of government officials have a rich history in the Anglo-American tradition." *Connecticut v. Cahill*, 217 F.3d 93, 100 (2d Cir. 2000). The Supreme Court has long "sustain[ed] the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution," *Bell v. Hood*, 327 U. S. 678, 684 (1946), and such suits "have proceeded against both State and federal officers," *Cahill*, 217 F.3d at 101; *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–91 (1949); *R.I. Dep't of Envt'l Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002) ("[O]ur courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringements of federal rights."); Erwin Chemerinsky, *Federal Jurisdiction* § 9.1.1, at 632 (6th ed. 2012) ("[T]he Supreme Court long has held that federal officers may be sued for injunctive relief to prevent future infringements of federal laws."); Richard H. Fallon, Jr. *et al.*, *Hart and Wechsler's The Federal Courts and the Federal System* 284 (6th ed. 2009) ("The principle that the Constitution creates a cause of action against governmental officials for injunctive relief . . . has been easily absorbed in suits challenging *federal* official action."). Thus, while the Supreme Court in *Bivens* created an implied right of action against federal officials for damages, Justice Harlan noted that there was already a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." *Bivens*, 403 U.S. at 404

(Harlan, J., concurring);[3] *see also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231–32 (10th Cir. 2005); *Mitchum v. Hurt*, 73 F.3d 30, 35 (3d Cir. 1995) (Alito, J.).[4]

The Second Circuit has expressly held that sovereign immunity does not bar "claims for prospective equitable relief" against federal officials.[5] *Conyers v. Rossides*, 558 F.3d 137, 150 (2d Cir. 2009) (citing *Dotson v. Griesa*, 398 F.3d 156, 178–79 (2d Cir. 2005)); *see also Smith v. Lehman*, 689 F.2d 342, 345 n.7 (2d Cir. 1982) ("[S]overeign immunity does not apply in cases of alleged constitutional violations even where the sovereign is called upon to take affirmative action . . . ." (citing *Hampton v. Mow Sun Wong*, 426 U.S. 88, 93 n.5 (1975))). While the court held in *Dotson* that a "comprehensive statutory scheme" for affording relief may preclude an action for injunctive relief just as it precludes a *Bivens* action for damages, *see Dotson*, 398 F.3d at 181–82, it did not suggest that equitable remedies against federal officials are categorically unavailable. In the context of prisoners' First Amendment rights, there is no

---

[3] Justice Harlan's concurrence in *Bivens* explained that a damages remedy was necessary because injunctive relief, though available, would not "obviate the harm" from an already-completed constitutional violation. *Bivens*, 403 U.S. at 410 (Harlan, J., concurring). Under those circumstances, "it is damages or nothing." *Id.*

[4] The government cites *Kurzberg v. Ashcroft*, 619 F.3d 176 (2d Cir. 2010), and *Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007), for the proposition that equitable relief is unavailable in a *Bivens* action. That may be so, but it is because *Bivens* created a damages remedy against a backdrop where injunctive relief was already available. *See Bivens*, 403 U.S. at 404 (Harlan, J., concurring); *Larson*, 337 U.S. at 689–91. Even the Second Circuit's opinion in *Bivens*, which held that a damages remedy was unavailable, acknowledged that "[i]t is now clear that there is an implied injunctive remedy for threatened or continuing constitutional violations." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 409 F.2d 718, 723 (2d Cir. 1969), *rev'd*, 403 U.S. 388; *see also id.* at 725 ("Injunctive relief is available to plaintiff if he can prove that he is threatened by repeated or continuing invasions of his constitutional right of privacy."). Nothing in the Supreme Court's decision in *Bivens* purported to alter the availability of equitable relief against ongoing constitutional violations. Indeed, in the Second Circuit decision relied on by *Kurzberg* (which was in turn relied upon by *Higazy*) for the proposition that equitable relief is unavailable in a *Bivens* action, the court held that equitable relief *was* available in the case before it, albeit not via *Bivens*. *See Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998).

[5] In addition, "[s]ection 702 of the APA 'waives the federal government's sovereign immunity in actions [for non-monetary relief against an agency or officer thereof] brought under the general federal question jurisdictional statute.'" *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008) (quoting *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003)) (second alteration in original); *see also* 5 U.S.C. § 702; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204 (2012).

6

comprehensive statutory scheme identified by the government that would preclude an action seeking injunctive relief.

To the extent there is any doubt as to this Court's power to enjoin a federal official from violating the Constitution, I conclude that the relief sought in this case is expressly available under the APA. "The APA, by its terms, provides a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court,' and applies universally," subject to two exceptions. *Bennett v. Spear*, 520 U.S. 154, 175 (1997) (quoting 5 U.S.C. § 704); *see also Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 188 (D.C. Cir. 2006) ("[T]he APA suppl[ies] a generic cause of action in favor of persons aggrieved by agency action." (internal quotation marks and citation omitted) (second alteration in original)). The government invokes one such exception, which bars judicial review of "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).[6] However "[i]t is well established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary." *Wong v. Warden, FCI Raybrook*, 171 F.3d 148, 149 (2d Cir. 1999); *see also Webster v. Doe*, 486 U.S. 592, 603–04 (1988); *Carey v. Klutznick*, 637 F.2d 834, 838–39 (2d Cir. 1980). Berkun's claim that Warden Terrell exercised his discretion in a manner that violated the First Amendment is therefore not barred by § 701(a)(2).[7] The government asserts no other obstacle to review under the APA.

---

[6] The other exception applies when a statute precludes judicial review. 5 U.S.C. § 701(a)(1). The government has not identified any statute, other than § 702(a)(2), that it claims precludes judicial review in this case.

[7] Unlike his First Amendment challenge, Berkun's attempt to challenge the BOP regulations governing inmate property as arbitrary and capricious is barred by § 702(a)(2). Section 702(a)(2) bars review when "the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Lunney*, 319 F.3d at 558 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)) (emphasis in *Lunney*). "[T]he APA's 'arbitrary and capricious' standard, *see* 5 U.S.C. § 706(2)(a), cannot be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action." *Id.* at 559 n.5 (citing *Heckler*, 470 U.S. at 829–30); *see also Schneider v. Feinberg*, 345 F.3d 135, 148–49 (2d Cir. 2003).

Having determined that this Court has the power to issue the relief Berkun seeks, I now turn to whether he is entitled to that relief.

B.  *The Merits*

1.  *First Amendment*

To determine whether a restriction on an inmate violates the First Amendment, courts generally look to the legal standard identified by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 528–29 (2006); *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004). Although "imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment[,] . . . the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *Banks*, 548 U.S. at 528 (citations omitted). *Turner* thus held that "restrictive prison regulations are permissible if they are '"reasonably related" to legitimate penological interests,' and are not an '"exaggerated response"' to such objectives." *Id.* (quoting *Turner*, 482 U.S. at 87).

The following factors are relevant to this determination: "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (internal quotation marks and citation omitted).

---

Congress has broadly delegated the authority to "control and manage[]" federal prisons to the Attorney General, 18 U.S.C. § 4001(b)(1); *see also* 18 U.S.C. § 4042(a)(1), who in turn has delegated that authority to the BOP, *see* 28 C.F.R. § 0.96. Pursuant to this authority, the BOP has promulgated §§ 553.10 and 553.11 to govern inmates' possession of property in prison. Section 553.10 authorizes each federal prison warden to "identify in writing that personal property which may be retained by an inmate." It provides no meaningful standard against which to evaluate a decision to allow or disallow the possession of specific property. Although § 553.11 does identify certain categories of property that inmates may possess, including radios and watches, it does not mandate that inmates be allowed to possess jigsaw puzzles. Rather, the governing statutes and regulations commit the decision to allow possession of such items to agency discretion, subject to constitutional limitations. Accordingly, judicial review of the arbitrary-and-capricious claim is unavailable under the APA. *See Lunney*, 319 F.3d at 558.

The second factor "is whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the court should consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And the fourth factor is the availability of "'ready alternatives' for furthering the governmental interest." *Banks*, 548 U.S. at 529 (quoting *Turner*, 482 U.S. at 90).

Before a court may sustain a prison regulation as being reasonably related to a legitimate penological interest, the government must identify that interest. *See, e.g.*, *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (noting that court could not determine that deprivation of books and cassette was permissible under First Amendment where the prison superintendent had "yet to articulate with record evidence a legitimate penological interest in denying" the inmate access to them); *Cisse v. Aviles*, No. 10-6116 (SDW), 2011 WL 1327438, at *6 (D.N.J. Mar. 31, 2011); *Davenport v. Artus*, No. 09-CV-875 (TJM) (DRH), 2011 WL 553137, at *7 (N.D.N.Y. Jan. 10, 2011), *report and recommendation adopted*, 2011 WL 552146 (N.D.N.Y. Feb. 9, 2011); *Harris v. Lord*, 957 F. Supp. 471, 476 (S.D.N.Y. 1997); *Johnson v. Guiffere*, No. 04-CV-57, 2007 WL 3046703, at *6 (N.D.N.Y. Oct. 17, 2007); *see also Shakur*, 391 F.3d at 115 (noting that a court would not uphold validity of regulation under *Turner* "on the face of the complaint alone" (internal quotation marks and citation omitted)); *Wolf v. Ashcroft*, 297 F.3d 305, 308 (3d Cir. 2002) (reversing decision that sustained prison regulations because lower court "never stated or described the interest purportedly served by the prison policy, nor did it determine whether the interest was neutral and legitimate"); *Burgin v. Henderson*, 536 F.2d 501, 504 (2d Cir. 1976) (record as to specifics of and reason for prison rule was necessary before court could determine its validity).

9

As these decisions recognize, it is generally not a court's role to speculate as to the conceivable justifications for a prison regulation. *But cf. Shakur*, 391 F.3d at 115 n.4 ("Admittedly, there are regulations so obviously related to legitimate penological concerns that challenges to them may be dismissed . . . based simply on an (irrefutable) 'common sense determination.'" (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1059 (2d Cir. 1995) (Calabresi, J., dissenting)) (other internal quotation marks omitted) (alteration in original)). The underlying principle that courts should defer to the informed judgments of prison authorities, *see Block v. Rutherford*, 468 U.S. 576, 584, 591 (1984); *see also Banks*, 548 U.S. at 528 ("[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'" (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003))), does not require a court to try to imagine a regulation's possible justifications when the government has not offered any.

Here, the government has failed to articulate a reason for the prison's refusal to allow Berkun to obtain a jigsaw puzzle. It merely references the BOP regulations allowing prison officials to restrict access to personal property. But it is tautological to say that the justification for restricting a prisoner's access to personal property is that prisons may restrict prisoners' access to personal property. While I do not doubt that there are legitimate penological interests that justify restricting inmates' access to recreational items such as jigsaw puzzles, the government has not explained what those interests are.

However, that does not mean that Berkun is entitled to the relief he seeks. *Turner* applies to restrictions that impinge on prisoners' constitutional rights. If a restriction does not affect a constitutional right, then it need not be subjected to analysis under *Turner* at all. Thus, to obtain relief Berkun must demonstrate that he has a constitutionally-protected interest in possessing a jigsaw puzzle.

Activity must be "sufficiently imbued with elements of communication" to be protected by the First Amendment. *Spence v. Washington*, 418 U.S. 405, 409 (1974). Certainly, "the Constitution looks beyond written or spoken words as mediums of expression." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 569 (1995); *see also Bery v. City of New York*, 97 F.3d 689, 694–95 (2d Cir. 1996). But the Supreme Court has "rejected 'the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Texas v. Johnson,* 491 U.S. 397, 404 (1989) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). "It is possible to find some kernel of expression in almost every activity a person undertakes – for example, walking down the street or meeting one's friends at a shopping mall – but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

Games, puzzles and hobbies may be expressive and, therefore, are not categorically unprotected by the First Amendment. *See Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011) (video games are protected by the First Amendment because they "communicate ideas – and even social messages – through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)"). But many courts have held that certain games or hobbies are insufficiently expressive to warrant First Amendment protection. *See, e.g.*, *Stanglin*, 490 U.S. at 25 (recreational dancing); *There to Care, Inc. v. Comm'r of Ind. Dep't of Revenue*, 19 F.3d 1165, 1167 (7th Cir. 1994) (bingo); *AK Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579 (LAP), 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011) (poker), *aff'd*, 444 F. App'x 475 (2d Cir. 2011); *Lamle v. City of Santa Monica*, No. 04-CV-6355-GHK

11

(SH), 2010 WL 3734868, at *7–10 & n.19 (C.D. Cal. July 23, 2010) (strategy game called Farook), *report and recommendation adopted*, 2010 WL 3734864 (C.D. Cal. Sept. 22, 2010); *Fox v. Blades*, No. CV06-96-S-BLW, 2006 WL 1006802, at *1 (D. Idaho Apr. 14, 2006) (possession of "hobbycraft" materials); *see also Fighting Finest, Inc. v. Bratton*, 898 F. Supp. 192, 195 (S.D.N.Y. 1995) ("[W]e are not convinced that a boxing match, in which police officers participate, inexorably conveys any message other than that police officers can be pugilists."), *aff'd*, 95 F.3d 224 (2d Cir. 1996).

Berkun has failed to show that his possession of a jigsaw puzzle is expressive and therefore constitutionally protected. A jigsaw puzzle generally consists of an image that has been broken into a number of pieces, which are then reassembled. Even if the reassembled image itself were protected by the First Amendment, Berkun has not shown how the act of assembling the pieces is in any way expressive conduct. I therefore conclude that he has not met his burden of showing that the denial of his request to receive a jigsaw puzzle violated any constitutional right.[8]

2. *Challenge to Regulations Governing Inmate Property*

As noted above, Berkun's challenge to the BOP regulations is precluded by the APA's bar of judicial review over actions committed to agency discretion by law. However, even if I were to consider Berkun's challenge to the regulations on the merits, I would conclude they are valid, both facially and as applied.

In order to ensure safety and security within prisons, prison authorities must be able to limit what property inmates may possess. The BOP regulations allow prison authorities

---

[8] Moreover, during oral argument, Berkun appeared to abandon his First Amendment challenge to the denial of his request for a jigsaw puzzle.

to appropriately exercise their "broad discretion" in determining what property should or should not be allowed. *Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Chapdelaine v. Keller*, No. 95-CV-1126 RSP/GLS, 1998 WL 357350, at *11 (N.D.N.Y. Apr. 16, 1998).

Berkun has not shown that the application of these regulations to his request to receive a jigsaw puzzle was arbitrary or capricious. He argues that there is no valid reason to limit him from receiving a jigsaw puzzle in the mail because he already received a smaller jigsaw puzzle without any apparent difficulties. But the fact that he received one puzzle, apparently in error, does not mean that prison authorities must allow him to receive another puzzle. Prison authorities may restrict access to items even though the prison mail room has the capacity to receive and screen them.

Berkun also argues that it was irrational to deny his request to receive a puzzle because inmates are allowed to receive books and other items of similar size. But there is nothing irrational about prison authorities restricting property by category rather than its physical dimensions. Indeed, given the limitations on the ability of prisons to process and store inmate property, it is perfectly rational to favor constitutionally protected items, such as books, over unprotected items such as a jigsaw puzzle.

CONCLUSION

For the reasons stated above, the petition is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

13

So ordered.

John Gleeson, U.S.D.J.

Dated: August 6, 2012
       Brooklyn, New York

Case 1:12-cv-00706-JG   Document 16   Filed 08/06/12   Page 14 of 14 PageID #: 80